# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Antion Deion Shelby,                                    Civ. No. 18-3356 (JNE/BRT)

                      Petitioner,

v.

                                            **REPORT AND**
State of Minnesota,                                    **RECOMMENDATION**

                      Respondent.

---

Antion Deion Shelby, 1101 Linden Lane, Faribault, MN 55021, *pro se* Petitioner.

Edwin William Stockmeyer, III, Esq., and Matthew Frank, Esq., Minnesota Attorney General's Office; Peter R. Marker, Ramsey County Attorney's Office, counsel for Respondent.

---

BECKY R. THORSON, United States Magistrate Judge.

       This matter is before this Court on Antion Deion Shelby's *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner pleaded guilty to one count of first-degree criminal sexual conduct involving his minor daughter in Ramsey County District Court and was sentenced to 199 months in prison. *State v. Shelby*, No. A15-1265, 2017 WL 2919107, at *1 (Minn. Ct. App. July 10, 2017). Now, Petitioner argues that he should be permitted to withdraw his guilty plea because (1) it was unintelligent, and (2) it was entered into due to ineffective assistance of counsel.[1]

---

[1]     Shelby's Petition and his supporting Memorandum allege three grounds for relief, but his third ground is merely a restatement of his ineffective-assistance-of-counsel claim. (*See* Pet. 8; Pet.'s Mem. 3–7.)

(Doc. No. 1, Pet. 5–7; Doc. No. 2, Pet.'s Mem. 2–4.) Respondent, the State of Minnesota, opposes Shelby's Petition and requests that it be denied with prejudice. (*See* Doc. No. 11, Resp. to Pet.)

Also before this Court is Petitioner's Motion to Stay wherein he requests that his present Petition be stayed so that he may exhaust "a new legal issue" in State court before proceeding. (*See* Doc. No. 15, Mot. to Stay.) Respondent opposes the motion, arguing that while Petitioner does not specify what his new claim is, it is probably procedurally barred. (*See* Doc. No. 17, Resp. to Mot.) Petitioner clarifies in his Reply that based on a review of his full sentencing transcript, he now believes the sentencing court erred by "play[ing] a significant role in the Plea Agreement." (Doc. No. 19, Mot. to Stay Reply 2.)

For the reasons that follow, this Court recommends that both Petitioner's Motion to Stay and Petition be denied.

## I.    Background

In August 2014, Petitioner was charged with three counts of first-degree criminal sexual conduct relating to his minor daughter. *Shelby*, 2017 WL 2919107, at *1. He subsequently offered a full, post-*Miranda* confession to police. *Id.* On February 9, 2015, Petitioner entered a straight guilty plea to one count of first-degree criminal sexual conduct, and in return prosecutors dropped the other charges. (*See* Doc. 12-1, Resp.'s Exs. 1–2.) Petitioner's plea petition indicated that "Defense will argue for a dispositional departure at sentencing." (*Id.* at 2.)

At the sentencing hearing on May 8, 2015, the district court found that Petitioner was not amendable to probation and that the interests of public safety required a prison

sentence. (*See* Doc. No. 21-2, Sentencing Tr. 21–22.) The district court sentenced

Petitioner to 199 months in prison, with a minimum period of incarceration of 132 and

two-thirds months. (*Id.* at 22.) The court of appeals affirmed, and the Minnesota Supreme

Court denied Petitioner's petition for review. *See State v. Shelby*, No. A15-1265, 2017

WL 2919107, *1 (Minn. Ct. App. July 10, 2017), *review denied* (Minn. Sept. 27, 2017).

Petitioner filed the present action on December 10, 2018. (Doc. No. 1.)

## II.     Analysis

### A. Petitioner's Motion to Stay Should be Denied

On May 31, 2019, Petitioner filed a Motion to Stay his Petition because he wishes

"to properly exhaust a new legal issue" at the state level "that wasn't known before [his

Petition] was presented to this Court for consideration." (Doc. No. 15, Mot. to Stay 1.)

The State responded that (1) the Petition in this matter was not "mixed" so a stay-and-

abeyance procedure here is not appropriate, and (2) Petitioner failed to identify what

claim he wishes to pursue in state court, but most claims would be procedurally barred.

(Doc. No. 17, Mot. to Stay Resp. 1–2 (citing *Rhines v. Weber*, 544 U.S. 269, 274–75

(2005); *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)).) In his Reply, Petitioner

clarified that he only recently came into possession of the full transcript of his sentencing,

and upon review of that document he "believes that the District Court 'erred' when it

played a significant role in the Plea Agreement even after the State was in opposition of

the Plea that was being offered and entertained by the Court." (Doc. No. 19, Mot. to Stay

Reply 2.)

3

This Court construes Petitioner's Motion to Stay as also requesting that his Petition be amended to include his unexhausted claim. A federal court may not adjudicate a habeas petition that presents both exhausted and unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 273 (2005). The Supreme Court, however, has established a stay-and-abeyance procedure that is available only in narrow circumstances which must comport with the purposes of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Rhines*, 544 U.S. at 277. Staying a federal case so a petitioner can return to state court to pursue unexhausted claims "undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition." *Id.* Staying a federal case for these reasons also "frustrates AEDPA's objective of encouraging [the] finality [of state-court judgments] by allowing a petitioner to delay the resolution of the federal proceedings. *Id.* at 276–77.

Accordingly, a federal court may only employ the stay-and-abeyance procedure set forth in *Rhines* where three conditions are met: First, there must have been "good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. Second, even if a petitioner shows good cause, the court should not grant a stay when the "unexhausted claims are plainly meritless." *Id.* And finally, the petitioner cannot have engaged in intentionally dilatory litigation tactics. *Id.* at 278. For the reasons that follow, this Court concludes that Petitioner's unexhausted claim lacks merit, and therefore his Motion to Stay should be denied.

### i. Petitioner's new claim is not procedurally barred under Minnesota law

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). This requirement gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*; *see also O'Sullivan v. Boerckel*, 535 U.S. 838, 845 (1999). A petitioner meets the "fair presentation" requirement if the state court "rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). "If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now." *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006). In other words, the exhaustion requirement is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law"; but "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (citing *Teague v. Lane*, 489 U.S. 288 (1989) and *Wainright v. Sykes*, 433 U.S. 72 (1977)).

Under Minnesota law, one such procedural rule that may result in procedural default is known as the *Knaffla* rule. In *Knaffla*, the Minnesota Supreme Court explained that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). This "longstanding procedural bar . . . prevents state prisoners from seeking postconviction relief based on claims that could have been raised on direct appeal, either because the prisoner knew or should have known of the claims at that time." *Vann v. Smith*, No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015). There are two exceptions to this rule. First, "if a claim is known to the petitioner at the time of an appeal but is not raised, it will not be barred if its novelty was so great that its legal basis was not reasonably available when the direct appeal was taken." *Jackson v. Symmes*, Civil No. 09-2946 (SRN/JSM), 2011 WL 1300930, at *13 (D. Minn. Jan. 18, 2011), *report and recommendation adopted*, 2011 WL 1256617 (D. Minn. Apr. 4, 2017). Second, it will not be barred "if the claim's legal basis was sufficiently available" and "fairness so requires the review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal." *Id.* (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006); *Powers v. State*, 731 N.W.2d 499, 502 (Minn. 2007)).

Here, Petitioner did not raise his new claim that the district court judge erred by playing a "significant role" in his plea agreement—which the state opposed—on direct appeal. Accordingly, this Court concludes that the claim is properly subject to the *Knaffla*

procedural bar and is procedurally defaulted unless one of the two exceptions described above applies.

The first exception to the *Knaffla* rule requires that the new claim's novelty is so great that its legal basis was not reasonably available at the time Petitioner undertook his direct appeal. *Jackson*, 2011 WL 1300930, at *13. Here, the alleged error Petitioner seeks to litigate—that the district court judge improperly involved herself in his plea agreement—was not reasonably available at the time Petitioner undertook his direct appeal. Petitioner's unexhausted claim was only made possible because the Minnesota Supreme Court subsequently held that a district court judge may *not* participate in the negotiation of a plea bargain, thereby overruling a line of Minnesota court of appeals decisions that had taken a more lenient view of such matters. *See Wheeler v. State*, 909 N.W.2d 558 (Minn. 2018), *overruling State v. Anyanwu*, 681 N.W.2d 411 (Minn. 2004), and *Anderson v. State*, 746 N.W.2d 901 (Minn. 2008). This shift in the law would not have been known to Petitioner at the time of his direct appeal, and therefore his unexhausted claim is not barred by *Knaffla*.

### ii. Petitioner's claim lacks merit under *Wheeler*

Accordingly, this Court must next analyze Petitioner's unexhausted claim under *Wheeler* to determine whether it is "plainly meritless." *Rhines*, 544 U.S. at 277. In *Wheeler*, the district court judge made the following comments on the record—in the defendant's presence—encouraging the parties to negotiate:

> I think . . . you both have done a very thorough job of evaluating your case. There are positives, I'm sure, and negatives on both sides of the coin, so to speak, and I would – really like someone to extend an offer, at least make

an attempt to try to resolve this case. It is a pretty serious situation to have
children of the defendant having to come to court and testify possibly
against their own mother. Both of you should be considering this. So I
would like to see some attempts made at trying to resolve this.

*Wheeler*, 909 N.W.2d at 561. The judge also stated, "I don't care how you want to

package it. . . . There [are] wins and losses on a lot of elements in this case, and you

never know what a jury is going to do." *Id.* Plea negotiations continued, and both parties

made new plea offers. The district court judge then proffered unsolicited comments on

the parties' respective positions:

Thank you for the efforts you all have put towards settling this case. . . .
The defendant's offer to enter a straight plea to manslaughter in the second
degree with a waiver of Blakely for a double departure of 96 months in
prison, much less for a probationary disposition, isn't something this court
is willing to do. Given what facts the court is aware of, a plea to
unintentional 2nd degree murder with a prison term the parties can agree on
(something in the range of x months and 240 months) appears to be more
realistic.

*Id.* No agreement was reached and the case proceeded to trial.

At the end of day one of trial, the judge requested an update on plea negotiations.

The defendant alleged that at this time the judge and the law clerk made additional, off-

the-record remarks proposing a plea to second-degree unintentional murder. *Id.* at 562.

Before the third day of trial could get underway, the defendant pleaded guilty to the

offense of second-degree unintentional murder. *Id.* At sentencing, the prosecutor stated

"we're all thankful that [the defendant's children] did not have to come . . . testify, I

know the [c]ourt wanted that more than anything." *Id.* Defense counsel stated that the

defendant had surrendered her "right to trial . . . to protect her children." *Id.* The judge

remarked that he had met the children and could "tell right away . . . that they were

suffering[,]" and thus was "appreciative of the fact that the parties were able to come to some agreement . . . that kind of, sort of, prompted [the defendant] to enter a plea to Unintentional Second Degree." *Id.*

A year later, the defendant in *Wheeler* filed a petition for postconviction relief asserting that the district court had improperly participated in the plea-bargaining negotiations. *Id.* The postconviction court acknowledged that the judge had been "unambiguously involved" in those negotiations, but that such involvement was not improper. The court of appeals affirmed. *Wheeler v. State*, 889 N.W.2d 807, 809 (Minn. Ct. App. 2017), *reversed by Wheeler v. State*, 909 N.W.2d 558 (Minn. 2018).

Upon review, the Minnesota Supreme Court reversed the court of appeals, observing that,

> In recent years, the court of appeals has interpreted *Johnson* to instead mean that although a judge cannot "become excessively involved" in plea negotiations, *State v. Anyanwu*, 681 N.W.2d 411, 414 (Minn. App. 2004) (emphasis added), some judicial involvement is "inevitable" and acceptable, *Wheeler*, 889 N.W.2d at 815. These decisions have essentially read *Johnson* to only prohibit "direct involvement in the negotiations, [the] imposition of a plea agreement, or [the] promise to impose a particular sentence." *Anderson v. State*, 746 N.W.2d 901, 905 (Minn. App. 2008). It appears that the district courts have operated with this line of cases in mind.

*Wheeler*, 909 N.W.2d at 564. The Minnesota Supreme Court firmly rejected these developments in the caselaw, stating that "[a] district court judge's function is limited to approving or rejecting a plea 'submitted for judicial acceptance.'" *Id.* at 564–65 (citing *Johnson*, 156 N.W.2d at 223; Minn. R. Crim. P. 15.04, subd. 3(1)). The court "reaffirm[ed] the principle that a district court judge should not participate in the plea

bargaining negotiation itself, and [it] overrule[d] court of appeals decisions to the extent that they are inconsistent with this principle." *Id.* at 564.

Here, the Court has reviewed the district court transcripts relevant to Petitioner's new claim with the new standard articulated by *Wheeler* in mind. Those transcripts, however, do not support Petitioner's argument that the district court judge improperly participated in the plea negotiations in his case. The transcripts indicate that at the plea hearing held on February 9, 2015, Petitioner pleaded guilty to a single amended count. (Doc. No. 21, Plea Hr'g Tr. 2.) There, Petitioner's counsel stated:

> There is no plea agreement with the State of Minnesota. It's going to be a straight-up plea. The defense will make a motion for either a stay of imposition or a stay of execution in this case. The State is not going to agree to that. . . . All other elements of sentencing . . . will be up to the Court.

(*Id.* at 2–3.) The judge then confirmed with the state that this is correct, and asked Petitioner a series of questions concerning whether he understood his right to a trial, his plea, and wished to proceed; Petitioner answered all in the affirmative. (*Id.* at 3.) The remainder of the plea hearing consisted of defense counsel's examination of Petitioner, and the government's questions establishing a factual basis for Petitioner's guilty plea. There are no statements by the district court judge in that transcript that violate *Wheeler*'s rule that a judge's role is "limited to approving or rejecting a plea 'submitted for judicial acceptance.'" *Wheeler*, 909 N.W.2d at 564 (citations omitted).

Petitioner's Reply indicates that he only discovered the district court's alleged error upon receipt and review of the transcript of his *sentencing* hearing. (Mot. to Stay Reply 2.) By the time the sentencing hearing occurred, however, any plea negotiations

were closed, Petitioner's guilty plea had been entered and accepted by the court, and *Wheeler*'s prohibition on judicial interference in plea negotiations was no longer relevant. It is true that at sentencing the district court judge discussed various aspects of Petitioner's case—particularly the factors bearing on whether a dispositional departure was warranted—but such discussion was wholly appropriate for a sentencing hearing. (*See* Doc. No. 21-2, May 8 Sentencing Hr'g.) Therefore, this Court concludes that the Minnesota Supreme Court's decision in *Wheeler* is inapposite to Petitioner's case.

In sum, because Petitioner's unexhausted claim is "plainly meritless" under *Wheeler*, this Court recommends that his Motion to Stay must be denied. *Rhines*, 544 U.S. at 277–78.

### B.  The Petition for Habeas Relief Should be Denied

This Court now turns to the arguments advanced in the Petition for Habeas Corpus itself. There, Petitioner argues that he should be allowed to withdraw his guilty plea because (1) his plea was not intelligent; (2) he was denied effective assistance of counsel; and (3) but for his counsel's bad advice, he would not have pleaded guilty. Respondent opposes the Petition.

### i.  Standard of Review Under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an

11

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the "unreasonable application" clause, the writ can be granted "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to

12

afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

### ii. Petitioner's guilty plea was knowing and voluntary.

A guilty plea, which waives a criminal defendant's right to a trial and its attendant rights, "not only must be voluntary," but must also be a knowing and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (holding guilty plea that is not voluntary, knowing, and intelligent violates due process).

Petitioner's claim that his guilty plea was not intelligent was considered on the merits by the Minnesota court of appeals on direct appeal and rejected. There, Petitioner argued that his plea was not intelligent because his defense counsel (1) guaranteed he would receive probation in exchange for his guilty plea; (2) failed to inform him that a downward dispositional departure required a finding that such a departure would be in the best interest of the victim; (3) failed to fully evaluate his situation, resulting in a flawed estimate of his presumptive sentence; and (4) failed to advise him that because Petitioner was already on probation for domestic assault at the time he committed the newly charged criminal conduct, his motion for a downward dispositional departure was less likely to be granted. *See State v. Shelby*, No. A15-1265, 2017 WL 2919107, at *1 (Minn. Ct. App. July 10, 2017), *review denied* (Minn. Sept. 27, 2017).

13

Addressing Petitioner's allegation that his defense attorneys guaranteed him that he would receive probation for a guilty plea, the court of appeals observed that Petitioner's lead attorney testified at the postconviction hearing that he made it "absolutely clear" to Petitioner that there was no guarantee of probation were he to plead guilty. *Shelby*, 2017 WL 2919107, at *2. In fact, as the court of appeals notes, Petitioner's potential sentence was discussed repeatedly prior to the district court's decision on his motion for a downward departure. At the opening of his plea hearing, Petitioner's attorney stated:

> There is no plea agreement with the State of Minnesota. . . . The defense will make a motion for either a stay of imposition or a stay of execution in this case. The State is not going to agree to that . . . I envision the State opposing that motion . . . . All other elements of sentencing – all elements of sentencing will be up to the Court.

(Plea Hr'g Tr. 2–3.)

Petitioner was then examined by defense counsel concerning his desire to submit a guilty plea. During that examination, defense counsel asked, "Has anybody guaranteed you any type of particular sentence that you would get if you plead guilty?" Petitioner answered, "No." (*Id.* at 9.) Defense counsel next asked whether Petitioner understood that counsel will move for a probationary sentence, the state will oppose that motion, and that "the judge does not have to grant our motion." (*Id.* at 9–10.) Petitioner responded that he understood. Defense counsel asked whether Petitioner was advised of the possibility that the court might deny the motion for a probationary sentence, and that the result would be a guideline prison sentence between 168 and 180 months. Petitioner responded, "Yes." (*Id.* at 10–11.) In sum, the record as a whole flatly contradicts Petitioner's assertion that

his attorneys "guaranteed" him a probationary sentence. *Shelby*, 2017 WL 2919107, at *2.

Petitioner's next argument is that his attorneys failed to inform him that a downward dispositional departure required a finding that such a departure would be in the best interest of his victim. Even if that were true, the district court's decision was not based on victim impact, it was based on whether Petitioner was amendable to probation and public safety. (*See* Doc. No. 21-2, Sentencing Hr'g 21–22.) In Minnesota, a downward dispositional departure is authorized if the district court finds that "the defendant is particularly amendable to probation or if offense-related mitigating circumstances are present." *State v. Love*, 350 N.W.2d 359, 361 (Minn. 1984). Thus, based on the record, the court of appeals was correct to conclude that the district court's denial of Petitioner's motion was based on whether Petitioner was amendable to probation, as well as public safety. The district court reasoned:

> But the only way that I cannot send you to prison is if, first of all, I find that you're amenable to probation. And what makes it difficult for me to find you're amenable to probation is that you were on probation when this offense occurred, all right? You were being supervised, you had resources available to you to ask for help for situations that you were dealing with, and you chose not to do that. And you've been on probation supervision before and you have chosen not to do the things the way the Court wanted you to do them, and ended up in at least one occasion, if not more than one occasion, going to prison. . . .
>
> The theft from person, you went to prison for violating probation. The sale of cocaine, it looks like you were on probation and you picked up a new offense for possession of cocaine and you ended up going to prison for violating probation. I understand that those offenses happened a while ago. They didn't happen that long ago. And I cannot find, first of all, that you are amenable to probation.

15

> Second, I find at least at this point that public safety requires that I not grant your request for probation but that I give you a prison sentence.

(Sentencing Hr'g 21–22.)

Petitioner's third argument is that defense counsel was unaware of his criminal history score, and thus mislead him as to what his potential sentence might be. On direct appeal, Petitioner pointed specifically to his counsel's statement to him in the plea hearing that "we think a guideline prison sentence in this case for you could be 168 or 180 months." (Plea Hr'g Tr. 10.) While it appears to be true that Petitioner's counsel did not know his precise criminal history score prior to the plea hearing,[2] the record does not support Petitioner's claim that he was ignorant of his potential sentence. First, the plea petition that Petitioner signed prior to the plea hearing indicated that the maximum penalty he faced was 30 years. (*See* Doc. No. 12-1, Plea Pet. 2.) Second, the court of appeals placed great weight on the fact that Petitioner,

> [F]ail[ed] to acknowledge that in his motion for a downward dispositional departure, which was filed *after* the plea was entered but *before* it was accepted by the district court, [Petitioner] identified that the presumptive middle-of-the-box sentence would be 234 months, which is the correct presumptive sentence for a first-degree criminal sexual conduct offender with Shelby's criminal-history score.

---

[2]    The court of appeals notes that Petitioner's lead attorney admitted his ignorance, testifying that he did not learn Petitioner's criminal history score until after a presentence investigation ("PSI") was completed. *Shelby*, 2017 WL 2919107, at *3. Co-counsel testified that she reviewed the relevant sentencing guidelines with Petitioner and based the estimates she gave him on her discussions with Petitioner about his criminal history score prior to the plea hearing. *Id.* None of this appears unusual – in Ramsey County the PSI and the official calculation of a defendant's criminal history score is ordinarily conducted *after* a plea hearing. *Id.*

*Shelby*, 2017 WL 2919107, at \*4 (emphasis added). Petitioner's PSI—which he also received before sentencing—"also correctly identified the presumptive middle-of-the-box sentence as 234 months." *Id.* In sum, the court of appeals was correct to conclude that Petitioner was on notice of his potential sentence should his motion for a dispositional departure fail prior to his plea's acceptance by the district court.

Petitioner's final argument as to why his guilty plea was not intelligent was that his attorneys failed to inform him that his motion for a downward dispositional departure was less likely to be granted because he was on probation. *Id.* This argument is without merit. As the court of appeals rightly observed, Petitioner himself provides no legal authority to support the proposition that a defendant has the right to know the odds of a motion succeeding, and neither the court of appeals nor this Court have been able to find such authority.

For these reasons, this Court recommends that Petitioner's claim that his guilty plea was not intelligent, and that he should thus be allowed to withdraw it, should be denied.

### iii.  Petitioner's counsel's performance was not deficient and did not prejudice his defense.

This Court next addresses Petitioner's second and third grounds for relief arguing ineffective assistance of counsel. A successful ineffective-assistance-of-counsel claim generally requires two showings: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–90 (1984). Under the first prong, Petitioner "must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 694). Under the second prong, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). "This is a heavy burden." *Caban v. United States*, 281 F.3d 778, 781 (8th Cir. 2002). "In determining whether counsel's conduct was objectively reasonable, 'there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689).

Petitioner's argument concerning ineffective assistance of counsel is hard to follow,[3] but the gravamen of his claim is that his defense counsel lacked a reasonable

---

[3]     For example, in Petitioner's briefing to the Court, he speaks about collateral consequences at some length, but this discussion is irrelevant to his present claims. Specifically, Petitioner cites *Taylor v. State*, 887 N.W.2d 821 (Minn. 2016), and *State v. Levkovich*, No. C4-03-232, 2003 WL 21694582 (Minn. Ct. App. July 22, 2003). But *Taylor* concerned whether the Supreme Court's ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010), required that defense counsel's failure to advise a defendant about predatory-offender-registration requirements before the defendant enters a guilty plea (it did not). And *Levkovich* concerned defense counsel's duty to apprise a defendant when deportation—a collateral consequence—might result from a guilty plea. *Levkovich*, 2003 WL 21694582, at *3. Here, Petitioner does not allege the existence of a collateral consequence – he argues that his attorneys' advice misled him regarding the potential sentence he was facing and the likelihood that he would be granted a downward dispositional departure if he pleaded guilty.

basis to advise him that he would receive a probationary sentence if he pleaded guilty. (*See* Pet.'s Mem. 2–7.) First, as has already been discussed above, there is no evidence in the record that defense counsel promised or guaranteed Petitioner a probationary sentence if he entered a guilty plea. To the contrary, the record demonstrates that Petitioner was put on notice of the potential prison sentence he faced and the fact that there was no guarantee that his motion for a dispositional departure would be granted. (*See, e.g.*, Plea Hr'g 2–3, 9–10; Plea Pet. 2.)

Second, in its decision, the court of appeals observed that Petitioner's lead attorney testified it was his belief that entering a straight plea and moving for a downward dispositional departure was Petitioner's best chance at leniency. *Shelby*, 2017 WL 2919107, at *5. The attorney stated that had Petitioner proceeded to trial, he would have faced three counts of first-degree criminal sexual conduct (rather than just one) and would have had to overcome a post-*Miranda* confession. *Id.* The court of appeals concluded—and this Court agrees—that this strategy was ultimately reasonable.

Therefore, because Petitioner has failed to demonstrate that defense counsel's performance fell below an objective standard of reasonableness, this Court recommends that his ineffective-assistance-of-counsel claims be denied.

### C.    Conclusion

The state court's resolution of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor did it result in a decision based on an unreasonable determination of the facts in light of

the evidence presented in state court. *Id.* § 2254(d)(2). Therefore, this Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2254.

### III.    Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1); Rule 11(a), Rules Governing Section 2254 Cases. A COA should not be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists would not debate that the Minnesota Court of Appeals correctly applied the relevant law to Petitioner's claims in his Petition. Therefore, this Court recommends that a COA should not issue.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Petitioner's Motion to Stay (Doc No. 15) be **DENIED**;

2.    Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

3.    No certificate of appealability be issued; and

4.    This action be **DISMISSED WITH PREJUDICE**.

Date: December 19, 2019.                    *s/ Becky R. Thorson*
                                            BECKY R. THORSON
                                            United States Magistrate Judge

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.